IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MONOLESA FITZPATRICK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:19-cv-553-JTA |
| ) | (WO) |
| KOCH FOODS OF ALABAMA, LLC, ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion to Dismiss Plaintiff's 42 U.S.C. § 1981 Retaliation Claim in Her Second Amended Complaint. (Doc. No. 35.) Plaintiff Monolesa Fitzpatrick ("Plaintiff") filed a Second Amended Complaint on July 20, 2021, alleging retaliation claims under Title VII of the Civil Rights Act, as amended (42 U.S.C. § 2000e, *et seq.*), and 42 U.S.C. § 1981 against her former employer, Koch Foods of Alabama, LLC ("Defendant"). (Doc. No. 34.) The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Docs. No. 19, 20.) Upon review of Plaintiff's Second Amended Complaint, Defendant's motion, and the parties' briefs, the court finds that the motion is due to DENIED.

### I. STANDARD OF REVIEW

When evaluating a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Resnick v. AvMed*, *Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012). To survive Rule 12(b)(6) scrutiny, "a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

## II.   BACKGROUND

Plaintiff is a woman of Jamaican national origin and African race who began her employment with Defendant in 2017. (Doc. No. 34 at ¶¶ 2, 8.) She claims she experienced hostility from the outset of her employment regarding the fact that she is from Jamaica and hostility over allegations that she practices voodoo. (*Id*. at ¶ 9.) Plaintiff alleges she suffered disparaging remarks from supervisors pertaining to being from Jamaica and claims that she practiced voodoo. (*Id*. at ¶¶ 12, 17.) Plaintiff further alleges she was terminated from her employment for filing multiple complaints with the Equal Employment Opportunity Commission ("EEOC") based on the hostility. (*Id*. at 3-7.) The Second Amended Complaint alleges two counts: retaliation under Title VII and retaliation under § 1981. (*Id.* at 8-12.) Plaintiff seeks declaratory relief, injunctive relief, back pay, front pay, compensatory and punitive damages. (*Id*. at ¶ 2.)

Defendant moves to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that the retaliation claim under § 1981 fails to state a claim upon which relief can be granted. (Doc. No. 35.) Defendant argues that voodoo is a religion and Plaintiff is attempting "to disguise a religious discrimination claim as one for race under § 1981." (*Id*. at 5.) Defendant further argues that Plaintiff's § 1981

2

claim is based on her national origin and that no cause of action for national origin discrimination is actionable under § 1981. (*Id*. at 5-6.) Defendant contends Plaintiff's complaint is due to be dismissed because there is no allegation that she opposed "racially discriminatory employment practices, only that she complained to [Human Resources] about allegations that she was involved in voodoo and later filed EEOC Charges claiming retaliation on the basis of national origin." (*Id*. at 7.)

In response, Plaintiff argues that her opposition to being ridiculed for being a Jamaica native and an alleged voodoo practitioner is protected under § 1981. (Doc. No. 37.) Citing cases from numerous courts, Plaintiff contends she suffered discrimination based on her ethnicity or ancestry and thus her race because she was subjected to "race-based stereotypes." (*Id*. at 5-7.)

Defendant replies that allegations based solely upon voodoo practice fail to state a claim for race-based discrimination under § 1981 and argues that Plaintiff's EEOC Charges only complained about discrimination based on national origin. (Doc. No. 38.) Defendant asserts that Plaintiff's allegations are insufficient as a matter of law to state a claim for retaliation under § 1981. (*Id*. at 7.)

The motion is fully briefed and ripe for disposition.

### III. JURISDICTION AND VENUE

This court exercises subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. The parties do not contest personal jurisdiction or venue, and the court finds sufficient allegations to support both in the Middle District of Alabama.

## IV.    DISCUSSION

Section 1981 prohibits racial discrimination in the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. *See* 42 U.S.C. § 1981(a), (b). "Although § 1981 does not itself use the word 'race,' the [Supreme] Court has construed the section to forbid all 'racial' discrimination in the making of private as well as public contracts." *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987) (citation omitted). Section 1981 thus creates a substantive statutory remedy for employment discrimination. *See Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459-60 (1975) ("§ 1981 affords a federal remedy against discrimination in private employment on the basis of race"); *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 472 (11th Cir. 1999) ("Section 1981 prohibits intentional race discrimination in the making and enforcement of public and private contracts, including employment contracts."). Though there is no mention of retaliation in the text of § 1981, the Supreme Court has held that § 1981 "encompasses claims of retaliation." *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 457 (2008). *See also Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) ("Retaliation claims are also cognizable under 42 U.S.C. § 1981.").

Generally, § 1981 is similar to, though independent from, Title VII. So much so that "[t]he analytical framework and rules about employer liability under Title VII and § 1981 are the same." *See Ash v. Tyson Foods, Inc.*, 664 F.3d 883, 904 (11th Cir. 2011). Yet, unlike Title VII, § 1981 claims are limited to race discrimination. *See Little v. United Technologies, Carrier Transicold Div.*, 103 F.3d 956, 961 (11th Cir. 1997) ("It is well-

4

established that § 1981 is concerned with racial discrimination in the making and enforcement of contracts." (emphasis in original)). The Supreme Court has held, however, that so long as a plaintiff can prove that she was subjected to intentional discrimination based on her race, ethnic characteristics, or ancestry, "rather than solely on the place or nation of [her] origin," she has an actionable claim under § 1981. *Saint Francis Coll.*, 481 U.S. at 613.

To establish a *prima facie* case for a Title VII retaliation claim, "[a] plaintiff . . . must show that: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action." *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010) (footnote omitted). Complaining about racial discrimination in the workplace is protected activity whether it is made formally or informally. *Rollins v. State of Fla. Dep't of Law Enf't*, 868 F.2d 397, 400 (11th Cir. 1989). An employee is shielded "from retaliation regardless of the merit of her complaints so long as she can show a good faith, reasonable belief" that the alleged discrimination violates § 1981. *Id.* (citation omitted). Thus, no matter how the complaint is made, in order to be protected activity under § 1981, it must communicate a belief that an employer is engaged in racial discrimination.

Defendant is correct in its contention that a claim for discrimination based solely on the plaintiff's place or nation of origin is not actionable under § 1981. *See Saint Francis Coll.*, 481 U.S. at 613; *Tippie v. Spacelabs Med., Inc.*, 180 F. App'x 51, 56 (11th Cir. 2006) ("By its very terms, § 1981 applies to claims of discrimination based on race, not national origin."). Nonetheless, the court's agreement with Defendant's arguments ends here.

A review of the Supreme Court's opinion in *Saint Francis Coll. v. Al-Khazraji* is instructive. In *Saint Francis College*, a college professor brought suit pursuant to 42 U.S.C. § 1981 against his employer, contending that he was denied tenure because of his Arabian ancestry or race. 481 U.S. 604. The College argued that the professor was a Caucasian and thus could not allege the kind of discrimination that § 1981 forbids. *Id*. at 609. The issue before the Supreme Court in *Saint Francis College* is the same as the issue presently before the undersigned: whether Plaintiff has alleged a *racial* discrimination claim within the meaning of § 1981. *Id*. The Supreme Court observed:

> [The College's] submission rests on the assumption that all those who might be Caucasians today were thought to be of the same race when § 1981 became law in the 19th century; and it may be that a variety of ethnic groups, including Arabs, are now considered to be within the Caucasian race. The understanding of "race" in the 19th century, however, was different. Plainly, all those who might be deemed Caucasian today were not thought to be of the same race at the time § 1981 became law.

*Id*. at 610 (footnote omitted). Examining dictionaries and encyclopedias, the Supreme Court observed that Finns, Gypsies, Basques, Swedes, Norwegians, Germans, Greeks, Italians, Mongolians, Jews, Hungarians, and Hebrews were all identified as distinct races. *Id*. at 611-612. The Court also noted that the legislative history of § 1981 referred to Scandinavians, Chinese, Latins, Spanish, Anglo-Saxons, Jews, Mexicans, Blacks, Mongolians, Gypsies, and Germans as distinct "races." *Id*. at 612. The Court found that discrimination based on ancestry or ethnic characteristics "is racial discrimination that Congress intended § 1981 to forbid, whether or not it would be classified as racial in terms of modern scientific theory." *Id*. at 613. Consequently, because Arabs were considered a part of a distinct "race" in the nineteenth century, they were among the classes of people

protected under § 1981 based on their ancestry or ethnic characteristics and the professor had a right to proceed on his claim.  *Id*.  The Supreme Court thus concluded that "[i]f [the professor] can prove that he was subjected to intentional discrimination based on the fact that he was born an Arab, rather than solely on the place or nation of his origin, or his religion, he will have made out a case under § 1981."  *Id*.

In light of *Saint Francis College*, this court is persuaded by the Fourth Circuit's analysis in *Nnadozie v. Genesis HealthCare Corp.*, 730 F. App'x 151, 157 (4th Cir. 2018).  In *Nnadozie*, the Fourth Circuit addressed claims of a hostile work environment under § 1981 based on a supervisor stereotyping her African employees as voodoo practitioners.  The Fourth Circuit noted that "other circuits have found that Section 1981 protects against discrimination based on being Jewish, Middle Eastern, or Iranian."  730 F. App'x at 157 (internal citations listing cases omitted).  The Fourth Circuit held "with evidence of some nexus between ethnic or ancestral characteristics and workplace discrimination, there is no reason why a plaintiff cannot bring a Section 1981 claim on the basis of being 'African' or 'Nigerian.' "  *Id*.  In addition, the Fourth Circuit rejected the argument that voodoo is a religion and thus cannot form part of a § 1981 claim, stating "[s]hared religious practice can be a facet of ethnic or ancestral identity."  *Id*. at 159. (citing *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 617-18 (1987)).  In conclusion, the Fourth Circuit held that "[t]he combination of the alleged voodoo commentary and hostility towards African employees provides a basis for a reasonable jury to conclude that [a plaintiff]

endured unwelcome, race-based conduct from her supervisor . . ." which violated § 1981. *Id*. at 159.[1]

Other courts have addressed similar allegations pertaining to non-Caucasian employees being stereotyped as voodoo practitioners and reached the same conclusion. *See Mandengue v. ADT Sec. Sys., Inc.*, Civ. Action No. ELH-09-3103, 2012 WL 892621 (D. Md. Mar. 14, 2012) (denying summary judgment for employer on hostile work environment claim under § 1981 brought by black woman of Cameroonian origin who alleged her supervisor had suggested she was performing "voodoo" or "witchcraft" on customers and remarked that she should "go back to Cameroon"); *Reed v. Dep't of Veterans Affs*., No. 1:16-CV-142-MW-GRJ, 2018 WL 3018206, at *5 (N.D. Fla. May 18, 2018), *report and recommendation adopted sub nom. Reed v. Dep't of Veteran Affs*., No. 1:16CV142-MW/GRJ, 2018 WL 3017322 (N.D. Fla. June 15, 2018) (denying motion to dismiss for Title VII hostile work environment claim which alleged plaintiff was stereotyped as being a practitioner of voodoo because of her race and "Louisiana roots").

Here, Plaintiff asserts that her retaliation claims are not based on her nation of origin but based on her race (African) or her African ancestry. Plaintiff alleges in her Second Amended Complaint that she complained to Defendant's "Human Resources Department and the EEOC about discrimination[,] includ[ing] that she was being labeled a practitioner

---

[1] Defendant argues "*Nnadozie* is an unpublished, out-of-circuit opinion which is not binding upon this Court." (Doc. No. 38 at 3.) That statement certainly is true. Yet, the statement also is unavailing because all of the cases cited by Defendant which address allegations relating to "voodoo" are opinions from other district courts which likewise are not binding upon this court. (*See* Doc. No. 38 at 2-3.)

of Voodoo." (Doc. No. 34 at ¶ 46.) Assuming the facts in the Second Amended Complaint are true, which this court must do at this stage in the litigation, the court finds that Plaintiff's allegations, although devoid of dates and details, are sufficient to withstand a motion to dismiss. Plaintiff alleges that supervisors stereotyped and ridiculed her as a voodoo practitioner because she is African. She further alleges that she complained of this conduct internally and to the EEOC, and as a result, Defendant terminated her employment. Because the line between ethnicity and national origin is "not a bright one," the court finds that Plaintiff has sufficiently alleged discrimination on the basis of race to state a cognizable retaliation claim under § 1981. *See Saint Francis Coll.,* 481 U.S. at 614 (Brennan, J., concurring); *Vill. of Freeport v. Barrella*, 814 F.3d 594, 606 (2d Cir. 2016) ("[C]laims based on race and national origin may substantially overlap or even be indistinguishable depending on the specific facts of a case." (internal quotation marks omitted)). Accordingly, Defendant is not entitled to dismissal of this claim under Rule 12(b)(6). *See Delly v. H.I.R.E. Inc.*, No. 04 CV 1481(JG), 2004 WL 2297821, at *7 (E.D. N.Y. 2004) ("Because of the often subtle overlap of race and national origin, however, I cannot say, as a matter of law, that some portion of the discrimination that [the plaintiff] allegedly faced was not based upon race.").[2]

---

[2] Contrary to Defendant's assertion, Plaintiff's failure to include race in her EEOC charges is not fatal to her § 1981 claim. *See Delly*, 2004 WL 2297821, at *7 ("[Defendant] is correct that [Plaintiff] failed to include race in his EEOC charge, but while such omission may preclude recovery under Title VII, it is not dispositive in connection with whether a plaintiff has asserted a claim in a § 1981 action.").

## V.   CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Dismiss (Doc. No. 35) is DENIED.

DONE this 14th day of February, 2022.

_/s/ Jerusha T. Adams_
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE