IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **MONOLESA FITZPATRICK,** | ) |
| | ) |
| **Plaintiff**, | ) |
| | ) |
| **v.** | ) |
| | ) |
| | ) Civ. Action No.: 2:19-cv-00553-JTA |
| **KOCH FOODS OF ALABAMA, LLC;** | ) |
| | ) |
| **Defendant**. | ) |
| | ) |

**MEMORANDUM IN OPPOSITION TO SUMMARY JUDGMENT**

**I.     INTRODUCTION**

Monolesa Fitzpatrick ("Fitzpatrick") opposes Defendant's Koch Foods of Alabama, LLC's ("Koch") Motion For Summary Judgment.

Fitzpatrick's tumultuous employment with Koch which included her filing multiple EEOC charges and ended with her being sprayed with a water hose and terminated. In a re-telling of events, Koch's managers, including the HR manager consistently believed Fitzpatrick's alleged tormentors and concluded Fitzpatrick was guilty of variety of charges included making false statements, cursing and/or terrorist threats.[1]   By contrast, Fitzpatrick alleges the HR Manager Bibb informed

---

[1] Doc. 52-25, pgs.2-4 Investigation Summary.

1

her that she was being terminated for complaining (i.e., protesting discriminatory mistreatment) too much by filing a lawsuit with the EEOC.[2]

Such different perspectives over the facts do not lend themselves to summary judgment. See *Greco v. Livingston Cnty.*, 774 F.3d 1061, 1062 (C.A.6 (Mich.), 2014):

> *Rashômon* and Rule 56 of the Federal Rules of Civil Procedure rarely take the stage together. But the conflicting accounts of this dog biting show that Akira Kurosawa and the authors of Civil Rule 56 shared an insight: that different people sometimes see the same event differently, whether due to different vantage points or self-interest.

## II. STATEMENT OF FACTS

### A. Fitzpatrick's Employment

About three weeks following January 24, 2017, Fitzpatrick's start date with Koch, her co-workers discovered that she was Jamaican and she began having problems on her job. Doc. 52-3, pg. 8 (Fitzpatrick Depo. pg. 23 lines 19-25, pg. 24 lines 1-5). Co-workers informed her, "Don't speak" when she just needed to use the restroom. Id at pg. 9, (Fitz Dep. page 25, lines 21-25, pg. 26 lines 1-2.Fitzpatrick, a recent immigrant, was insulted, "She said that I'm a witch and I work voodoo." Id. (Fitzpatrick Dep pg. 26, lines 7-8). The fellow employee in

---

[2] Ex. Fitzpatrick Filed EEOC charge 420-2019-00957.

front of other employees said that Fitzpatrick was "a voodoo lady" Id. (Fitzpatrick Dep. pg. 26, lines 14-15).  During her deposition Fitzpatrick explained:

I would be right on the line, for example, and there's all the workers,  And she said would come right there, and she would say it like she said it for me to hear.  And then she would tell the other co-workers, and they would ask me, "Do you work voodoo for real? Are you a voodoo lady? Are you a witch" and stuff like that."  Id. (Fitzpatrick Dep. pg. 27, lines 9-18).

The remarks left Fitzpatrick, on her first job in America, after receiving in tears.  Id. Fitzpatrick Dep. pg. 13, lines 7-20, pg. 29 lines 8-24.  Fitzpatrick went to HR about the comments whose representatives informed her that they do not condone bullying of employees.  Id. Fitzpatrick Dep. pg. 32, lines 7-25, pg. 33, lines 1-8.

The other employees specifically asked Fitzpatrick:

"They said, "Do you work voodoo for real?  What do you do to work the voodoo?  Do you stick pins in the doll?" It was just a lot of questions." 53-2 Fitzpatrick Dep. pg. 35, lines 9-14.  On another occasion, Fitzpatrick heard the line leader inform a co-worker not to look at Fitzpatrick, "….because she would die if she looked at my face." Id. Fitzpatrick dep. pg. 41, lines 1-6.

Fitzpatrick speaks with an accent and when asked, she informed the fellow employees she was from Jamaica.  Fitzpatrick Dep. pg. 54, lines 8-13.  Fitzpatrick explained that Koch's Lead line work identified her, "as a voodoo worker" and

then other employees would go on to say that people from Jamaica work "voodoo". Fitzpatrick pg. 55, lines 20-25.

Employees were being instructed that they would die if they looked in Fitzpatrick's face. Doc. 52-3, pg. 13(Fitzpatrick Dep. pg. 41, lines 5-12).

Things never really got better for Fitzpatrick and one occasion her supervisor greatly upset her by pulling out her hearing plugs and removing her hair net and touching her head in an attempt to see if she was wearing prohibited earrings. Doc. 52-3, pg. 26, Fitzpatrick Dep. pg. 96, lines 17-23.

Fitzpatrick filed a series of EEOC charges. (Ex. Filed EEOC charges).

At the end of January 2019, an altercation occurred that led to Fitzpatrick's termination.

Fitzpatrick testified about the bullying employee Henry subjected her too:

Q. How did Ms. Henry threaten and bully you?

A: Because she said that I'm a witch.

Q: And anything else that she did?

A: And I should go back to Jamaica. And at one point she made that statement like—I think it was Donald Trump that should send your ass back. "They should send you back to Jamaica where you're from with your voodoo. And I will keep whoop your ass. And when I'm done with you, you can put your little voodoo on me.

And that's when Tanya came up with the hose and then hosed me down, and they all laughed at me. Id. Fitzpatrick Dep. pg. 169:20-25, 170:1-5.

4

### B. Fitzpatrick's Termination

**After being sprayed, Fitzpatrick went to HR and wrote a statement:**

I am been threatened and bullied every day. I came to work by Nicole Henry and Tania and for no reason. I believe that my job and life is a risk and danger. I keep coming to HR on several occasion and you all are not doing anything to fix the problem or the situation. I am scared because I do not have anyone to talk because when I tried telling HR about the constance bulling and threat (sic) you don't do anything about it. Doc. 52-24, pg. 4 Fitzpatrick Statement

Fitzpatrick denied the malicious comments attributed to her by the company employees Tanya McCaskey, Kalmetrice Kemp, Courtney Brown and Jennifer Brown. ID. Fitzpatrick Dep. pgs. 172-176.

Regarding the final hosing, Fitzpatrick dispelled any suggestion that McCaskey, the alleged sprayer, was cleaning the floor and just got a little water on Fitzpatrick because she did not see her as the investigation concluded, "…none of these statements that they wrote is true. Because I am the one that got hosed down. And if she is cleaning the floor, why would the water wet my face? Why would I have been wet from my head to my feet if she was cleaning the floor? You have to be on a ladder like this high." Doc. 52-3, pg. 46 (Fitzpatrick Dep. pg. 176: lines 19-25); Doc. 52-25, pg. 3 Investigation Summary.

"So, they point me to her office. And Me and the union rep., Mr. Steve, went to the HR office to speak with Ms. Nikki Bibb. And that's when she told me that ever since I filed a lawsuit or an EEOC charge against Koch Foods, I've been complaining a lot so am I terminated." Doc. 52-3, pg. 47 (Fitzpatrick Dep pg. 177 lines 23-25, 178 lines 1-3).

5

The Investigation concluded Fitzpatrick was guilty of multiple violations including, "Threats of violence or terrorism toward anyone" Doc. 25-5 pg. 4, Investigation Summary.   All the rule violations included:

#14 Job Abandonment: unauthorized departure from a work shift; leaving the company premises without notifying the supervisor; or leaving an assigned work are or station during working hours without supervisory permission (employees must notify his or her supervisor and get permission to leave a shift).

#16- Making false or malicious statements to harm or destroy the reputation, authority, or official standing of an employee, the Company, or its products.

#21-  Cursing coworkers, supervisors, management, visitors, or vendors or customers.

#22.-  Threats of violence or terrorism toward anyone.   Id.

However, Jennifer Howard's Statement includes the information, "After that they were both going at back and forth." Doc. 52-28, pg. 2, Howard Statement.

Tanya McGaskey received no discipline for her role in the alleged assault. Doc. 52-1, pg. pg. 25 (Bibb Dep. pg. 94, lines 9-16).  The company did not believe Fitzpatrick that anything amiss occurred. Id. Bibb pg. 93, lines 17-23, pg. 94, line 1.  Fitzpatrick was determined to have made a false statement.  Id.

Fitzpatrick who had made multiple complaints to HR about discrimination and filed numerous EEOC charges was terminated.

**C.      Company Does Not Recognize Fitzpatrick's Discrimination Complaints**

In responding to Fitzpatrick's Interrogatory 5 which asked about any response to Fitzpatrick's complaints, the company stated that, "Moreover, despite the fact that she frequented Human Resources to check on payroll and alleged discrepancies in her compensation, Plaintiff never once complained about discrimination based on her national origin." (Ex. Defendant's Responses to Interrogatories pg. 6).[3]

Prior to termination, plaintiff filed three EEOC charges. Each alleged discrimination based on national origin. See Ex. Fitzpatrick EEOC charges dated December 21, 2017, April 30, 2018, August 17, 2018.

Shawnta Bibb, Koch's 30(b)6 representative on termination denied that Fitzpatrick ever complained to HR about national origin discrimination. "When I say she hasn't complained to the company, she has not come to HR to make a—a complaint." Doc. 52-1, pg. 19, Bibb Dep. pg. 69, lines 3-9. Bibb agrees that the EEOC's charges eventually come to HR. Id. lines 10-12. In addition, Fitzpatrick alleges that she went directly to HR on multiple occasions to complain. Doc. 52-24, pg. 4 Fitzpatrick statement.

---

[3] The Koch interrogatory answers in plaintiff's possession are unsigned by the defendant. The answers were confirmed by the defendant who indicated that they had been signed or would be signed. Doc. 55, pg. 15 Bibb Dep. pg. 55, lines 6-23, pg. 56, lines 1-19.

## III. Standard of Review

"A motion for summary judgment should be granted when 'there is no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law.'" *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997) (quoting Rule 56(c), Fed.R.Civ.P.). "Summary judgment is improper '[i]f a reasonable fact finder could draw more than one inference from the facts, and that inference creates a genuine issue of material fact.'" *Holifield*, 115 F.3d at 1561 (quoting *Cornelius v. Highland Lake,* 880 F.2d 348, 351 (11th Cir.1989), *cert. denied,* 494 U.S. 1066 (1990)).

 "The court may not weigh evidence to resolve a factual dispute; if a genuine issue of material fact is present, the court must deny summary judgment." *Holifield*, 115 F.3d at 1561 (citing *Hutcherson v. Progressive Corp.,* 984 F.2d 1152, 1155 (11th Cir.1993)). "Likewise, if reasonable minds could differ on the inferences arising from undisputed facts, then the court should deny summary judgment." *Holifield*, 115 F.3d at 1561 (citing *Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1534 (11th Cir.1992)). "On a summary judgment motion, the record and all reasonable inferences that can be drawn from it must be viewed in the light most favorable to the non-moving party." *Holifield*, 115 F.3d at 1561 (citing *McCabe v. Sharrett,* 12 F.3d 1558, 1560 (11th Cir.1994)). "[O]n summary judgment, close calls go to the non-moving party." *E.E.O.C. v. W. Customer Mgmt. Grp., LLC*, 899 F. Supp. 2d 1241 (N.D. Fla. 2012)(quoting *Russaw v. Barbour Cnty. Bd. of Educ.,* 2012

WL 3733368, at *11 (M.D.Ala. Aug. 28, 2012)). "[T]o withstand summary judgment, a plaintiff need only demonstrate that a genuine question exists as to whether the reason for the decision was intentional discrimination." *Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 525 (11th Cir. 1994).

If the record presents factual issues, the Court must not decide them; it must deny the motion and proceed to trial. *See Environmental Defense Fund v. Marsh,* 651 F.2d 983, 991 (5th Cir.1981). Summary judgment may be inappropriate even where the parties agree on the basic facts but disagree about the inferences that should be drawn from these facts. *See Lighting Fixture & Elec. Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir.1969). If reasonable minds might differ on the inferences arising from undisputed facts, then the Court should deny summary judgment. *See Impossible Electronics Techniques, Inc. v. Wackenhut Protective Sys., Inc.,* 669 F.2d 1026, 1031 (5th Cir.1982). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("[T]he dispute about a material fact is 'genuine,' ... if the evidence is such that a reasonable jury could return a verdict for the non-moving party.").

Particularly applicable to the facts here, a Northern District of Alabama Court recently recognized the inappropriateness of deciding credibility issues at summary judgment:

Furthermore, the practical reality that a plaintiff's "evidence consists mainly of his own testimony in his verified complaint, sworn response, and sworn affidavit does not preclude a finding that a genuine dispute of material fact exists." *Sears*, 922 F.3d at 1208. And, "[e]ven if his sworn statements turn out to be exaggerations or false, they are enough to raise a genuine issue of material fact" for trial. *Id.* at 1209. **When ruling on a summary judgment motion, a court cannot make credibility determinations**. *Miller v. Harget*, 458 F.3d 1251, 1256 (11th Cir. 2006).

*Brooks v. Edmonds*, 2023 WL 1811237, at *6 (N.D.Ala., 2023)(emphasis added)

## IV.   Legal Argument

### A.   Koch Disregards the Legal Standard For Summary Judgment

Koch, disregarding the applicable standard, invites the Court to make credibility determinations and weigh evidence that Fitzpatrick is untruthful and that Bibb did not mention Fitzpatrick's EEOC charge (lawsuit with the EEOC) as cause of her termination.[4]

Fitzpatrick testified,

"So they point me to her office. And Me and the union rep., Mr. Steve, went to the HR office to speak with Ms. Nikki Bibb.  And that's when she told me that ever since I filed a lawsuit or an EEOC charge against Koch Foods, I've been complaining a lot so am I terminated." Fitzpatrick Dep.  Doc. 52-3, pg. 47 (Dep pg. 177 lines 23-25, 178 lines 1-3).

---

[4] Ex. Fitzpatrick's EEOC Charge 420-2019-00957, pg. 2.

10

In seeking to deny Ms. Fitzpatrick her day in Court, Koch argues that Fitzpatrick testimony is an "unsubstantiated allegation" which does not establish but for causation. Koch further relies on and includes a statement from Union Representative Steve Jackson (filed as Doc.   ). Jackson was a Koch employee and Union Steward and as he testified,"… attended many disciplinary meetings for various employees." Jackson further elaborates, "Although I do not specifically recall the meetings in 2018 and 2019 with Ms. Fitzpatrick, my signature on the employee warning reports attached as Exhibit A indicates that I was present. " The defendant's witness with no specific recall of what was discussed at the meeting as compared to Fitzpatrick's testimony is a bridge too far to get the summary judgment side of the river.

Koch's footnote reliance on *Marria v. C.R. England Inc.*, 679 F. App'x 844, 847, 848 (11th Cir. 2017) is misplaced[5] and distinguishable. In that case the statement was merely an observational note at the end of a termination notice that the plaintiff had filed an EEOC charge. "He has also filed a suit against me and CRE."

---

[5] Doc. 51-pg. 16, f.n. 2 Brief In Support of Summary Judgment. Arguments raised in footnotes are disfavored. See *Doe v. Embry-Riddle Aeronautical University, Inc.,* 2021 WL 2814905, at *2 (M.D.Fla., 2021) "The Court is not required to, and will not, consider arguments raised solely in footnotes in the future."

Before the Court is much more direct that Fitzpatrick's discrimination complaints allegedly sparked her termination.

Even if not considered direct evidence of discrimination, the HR manager's statement of the reasons for discharge certainly raises questions of fact to survive summary judgment. See *Yarbrough v. YKK U.S.A., Inc.,* 2021 WL 4901903, at *3 (N.D.Ga., 2021)(statement that, "She told me I should have kept my mouth closed, I'd still have my job." while not direct evidence of retaliation was sufficient question of facts to survive summary judgment.)

Either way the analysis should not revolve around whether the statement is indirect evidence or direct evidence (as Fitzpatrick claims). *Ortiz v. Werner Enterprises, Inc*., 834 F.3d 760, 765 (C.A.7 (Ill.), 2016) "Evidence is evidence".

Bibb testified that she did not recall if she received Fitzpatrick's EEOC charges that predated Fitzpatrick's termination. Doc. 52-1, pg. 20,21 (Bibb Dep. pg. 76, lines 1-9)(pg. 77, lines 16-20.) Bibb denied any involvement in the preparation of an EEOC response prior to Fitzpatrick's termination. Id. Bibb Dep. pg. 81, lines 2-7.

Upon further deposition questioning Bibb conceded that in December 2018, she gathered personnel action forms and was in fact aware that Fitzpatrick filed an EEOC charge. Id. Bibb Dep. pg. 82, lines 2-13.

12

Koch's additional argument that the time gap, "the substantial delay", between August 2018 EEOC and February 2019 precludes any suggestion of retaliation. Doc. 51, pg. 17. However, the records reflect that it was not all quiet on the western front between August 2018 and February 2019 as Bibb was involved in gathering evidence to respond the EEOC charges and the company was in the process . Ex. EEOC November 27, Ex. December 2018 Response. In December 2018, the company describes a

 delay in receipt of Fitzpatrick and earlier charge until November 14, 2018. Ex. December 12, 2019 Letter to EEOC, pg. 2.

### B. Any EEOC Conclusions Not Dispositive At Summary Judgment

Koch also includes facts and evidence form letters from various EEOC investigators over the years as part of their summary judgment submission. See Doc. Defendant's Brief in Support of Summary Judgment, Doc. 51, pgs. 11-14,

In the Middle District of Alabama, the EEOC's investigative conclusions are not binding on the Court or to be given any weight, See *Matthews v. City of Dothan*, 2006 WL 3742237, at *11 (M.D.Ala.,2006) rejecting the EEOC's conclusions:

Matthews's final argument to establish pretext is the EEOC's cause determination. The EEOC determination is not binding on the court. *See Dickerson v. Metro. Dade County,* 659 F.2d 574, 579 n. 27 (5th Cir.1981) ( "[I]n Title VII litigation, the district court reviews the evidence de novo, independent of any determination by the EEOC."); *Smith v. Universal Servs., Inc.,* 454 F.2d 154, 157 (5th Cir.1972)[13] ("It is thus clear that the report is in no sense binding on the district

13

court and is to be given no more weight than any other testimony at trial."); *Williams v. Ala. Indus. Dev't Tr'g.,* 146 F.Supp.2d 1214, 1224 (M.D.Ala.2001) ("But there should be no confusion that [the EEOC] cannot usurp the judiciary's role in determining whether there is a genuine issue of material fact.").

Evaluation of evidence for summary judgment analysis and Federal Rule of Procedure 56 cannot be outsourced to an EEOC investigators.

### B. Complained of Voodoo Conduct is Also Covered § 1981 Prohibition of Race Discrimination and Retaliation

Summary judgment is due to be denied on Fitzpatrick's § 1981 retaliation claim for all of the aforementioned reasons. As Koch notes, the Court previously denied their Motion to Dismiss, however, for summary judgment purposes Koch argues that Fitzpatrick's testimony now requires dismissal because she linked Voodoo to Jamaica transforming the claim to one exclusively based on National Origin discrimination. Doc. 51, pgs. 20-24, Defendant's Brief in Support of Summary Judgment). However, in reality, her retaliation claims can be based on both national origin (Title VII) and race discrimination (42 U.S.C § 1981).

Koch separates the Voodoo claims from any racial component and places it firmly in Jamaican national origin box to avoid any suggestion of §1981 liability. That requires re-writing history and isolating Voodoo practices to a single island in the Caribbean. As this Court and others have observed Voodoo stems from

African traditions and is intertwined with race. *Fitzpatrick v. Koch Foods of Alabama, LLC,* 2022 WL 447073, at *4 (M.D.Ala., 2022):

In conclusion, the Fourth Circuit held that "[t]he combination of the alleged voodoo commentary and hostility towards African employees provides a basis for a reasonable jury to conclude that [a plaintiff] endured unwelcome, race-based conduct from her supervisor ..." which violated § 1981. *Id.* at 159.[1]

    Koch was aware that Fitzpatrick was being harassed because of Voodoo allegations- through her first EEOC charge and internal complaints. Koch employees also viewed another Jamaican employee in demeaning racial tropes. Fitzpatrick submitted a sworn statement to EEOC that included an allegation that another Jamaican employee was called names such as gorilla, ape and boy, along with other derogatory names. Ex. Fitzpatrick Statement. Ms. Bibb was aware of the employee but unaware of the allegation. Doc. 52-1 pgs. 7-8, Bibb Dep. pg. 24 lines 7-23, pg. 25, lines 1-23.

    Whether protesting being called a Voodoo Witch crosses the line into §1981 prohibited activities cannot be resolved at summary judgment. Moreover, Fitzpatrick went to HR to complain about being ostracized and mistreated based on allegedly practicing Voodoo. Doc. 52-3, pg. 12,13(Fitzpatrick Dep. pg.38- 41).

    Other courts have recognized, "Because of the often subtle overlap of race and national origin, however, I cannot say, as a matter of law, that some portion of the discrimination that Mr. Delly allegedly faced was not based upon race

15

*Delly v. H.I.R.E. Inc.*, 2004 WL 2297821, at *7 (E.D.N.Y.,2004). See also *MacMillan v. Millennium Broadway Hotel*, 873 F.Supp.2d 546, 557–58 (S.D.N.Y., 2012) "To a great extent, the outcome of the trial turned on the jury's conclusions regarding Scudero's intent in pinning the voodoo doll to the bulletin board. The issue of intent in a discrimination case presents a classic jury question."

Despite the defendant's best efforts to transform Fitzpatrick's Voodoo allegation exclusively into a Jamaican National origin claim to avoid the race question (and any potential §1981 liability), anti-voodoo efforts have a long history of being a proxy for race discrimination.

"There's nothing like a horror story to concentrate and focus our deepest fears. As African American studies scholar Michelle Y. Gordon writes, that's just what white newspapers in Louisiana did during Reconstruction, **turning white supremacists' worries about Black freedom into unsettling tales of "Voodoo."** (emphasis in the original)

Gershom, Livia, *Racism and the Fear of Voodoo* https://daily.jstor.org/racism-and-the-fear-of-voodoo/, last accessed March 29, 2023.

Other scholars have recognized that Voodoo is considered an African diaspora religion that found a home in Jamaica.

It was during her time at Columbia that she received a Guggenheim Fellowship award to study obeah, another African diasporic religion, in Jamaica. Her mission, as she stated it to the fellowship committee, was to write **"the proper voodoo book."** In her opinion, the racism and judgment of previous academics, generally white and Christian, had resulted in the demonization of these traditions, reducing them to caricatures of "black magic" and "devil worship."(emphasis also in original)

16

Brown, Lynn, *Voodoo and the Work of Zora Neale Hurston*,

https://daily.jstor.org/voodoo-and-the-work-of-zora-neale-hurston/  last accessed March 29, 2023

Checking a box on an EEOC charge is not the diving rod to determine if the employer was on notice about race discrimination through national origin complaints that are linked to race. *Short v. Mando American Corp.*, 805 F.Supp.2d 1246, 1268 (M.D.Ala., 2011), "However, this Court will consider evidence of any national origin discrimination as it relates to Short's race discrimination claim."

Alternatively, Fitzpatrick's §1981 retaliation claim is not dependent on proving the statute covered her claim.   As long as she had a reasonable belief that she was protesting conduct prohibited by 42 U.S.C 1981 or Title VII, she can bring a claim.

As explained in *Locascio v. BBDO Atlanta, Inc.*, 56 F.Supp.3d 1356, 1364–65 (N.D.Ga., 2014)

> However, "the plaintiff 'need not prove the underlying claim of [racial] discrimination which led to [his] protest,' so long as [ ]he had a reasonable good faith belief that the discrimination existed." *Meeks v. Computer Assocs. Int'l,* 15 F.3d 1013, 1021 (11th Cir.1994) (*quoting Tipton v. Canadian Imperial Bank of Commerce,* 872 F.2d 1491, 1494 (11th Cir.1989)). In other words, "the employer's practice, which a plaintiff opposes does not in fact have to be unlawful ... rather, the employee need only have a reasonable belief that the employer's practices are discriminatory." *Danner v. Sumter Cnty. Bd. of Educ.,* No. 712–CV–02391–

17

RDP, 2013 WL 754956, at *4 (N.D.Ala. Feb. 26, 2013) (citations and internal marks omitted). *See also Clover,* 176 F.3d at 1351 (holding that the conduct opposed need only be "close enough" to support an objectively reasonable belief of unlawful discrimination); *Taylor v. Cardiovascular Specialists, P.C.,* 4 F.Supp.3d 1374, 1380–81 (N.D.Ga.2014) (internal marks omitted) (*quoting Fine v. Ryan Int'l Airlines,* 305 F.3d 746, 752 (7th Cir.2002)) ("It is improper to retaliate against anyone for claiming a violation of Title VII [or § 1981] unless that claim is 'completely groundless.' But a groundless claim is one resting on facts that no reasonable person possibly could have construed as a case of discrimination."

Fitzpatrick's belief that she should not be referred to a Voodoo Witch or Voodoo practitioner in the workplace is within the bounds of reason.

## V.     Conclusion

**Wherefore premises considered**, plaintiff requests the Motion For Summary Judgment be Denied.

                                                Respectfully Submitted,

                                                */s/ Lee D. Winston*
                                                Lee D. Winston
                                                Attorney for Plaintiff

**OF COUNSEL:**
WINSTON COOKS, LLC
420 20th Street North Suite 2200
Birmingham, AL. 35203

## Certificate of Service

I certify that the foregoing has been served via the Court's Electronic filing on all counsel of record including:

Rachel V. Barlotta
Katelyn Dodd
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
Shipt Tower
420 North 20th Street, Suite 1400
Birmingham, AL  35203

This March 29, 2023.

*s/Lee Winston*
Of Counsel